

July 12, 2021
*Via United States Mail*

Governor Tate Reeves
Post Office Box 139
Jackson, Mississippi 39205

Lt. Governor Delbert Hosemann
Post Office Box 1018
Jackson, Mississippi 39215

Commissioner Burl Cain
Mississippi Department of Corrections
301 North Lamar Street
Jackson, Mississippi 39201

**RE: DRMS' MONITORING & INVESTIGATION OF MISSISSIPPI DEPARTMENT OF CORRECTIONS ON BEHALF OF OFFENDERS WITH DISABILITIES**

To Whom It May Concern:

Since 1982, Disability Rights ("DRMS") has served as the federally mandated protection and advocacy ("P&A") agency for the state of Mississippi. The P&A system is a national network of disability rights agencies tasked with investigating and monitoring abuse and neglect as well as providing legal representation and advocacy services to people with disabilities. To fulfill these duties, P&A agencies are given extensive and unique access[i] to:

- Investigate incidents of abuse and neglect[ii]
- Provide information, referrals, and training about the rights of people with disabilities and about DRMS services[iii];
- Monitor service provider and program compliance with respect to the rights and safety of residents[iv]; and
- Pursue administrative, legal and other appropriate remedies to ensure the protection of the rights of individuals with disabilities[v].

For the last two years, DRMS has conducted monitoring and investigations of the Mississippi Department of Corrections ("MDOC") utilizing its access authority through Protection & Advocacy for Persons with Developmental Disabilities ("PADD"), Protection and Advocacy for Individuals with Mental Illness

("PAIMI"), and Protection and Advocacy for Individuals Rights ("PAIR"). Our monitoring has taken place in several MDOC facilities, but with specific focus of MDOC's most populated facilities – Mississippi State Penitentiary ("MSP"), South Mississippi Correctional Institution ("SMCI"), and Central Mississippi Correctional Facility ("CMCF"). Our monitoring and advocacy work was culminated in a publicly released report which was provided to your offices as well as distributed to the entirety of the Mississippi Legislature. To date, we have not received any response to the allegations or concerns addressed in this report. Nonetheless, I have included another copy of this report with this correspondence for your convenience.

The short and simple summary: **<u>MDOC is subjecting offenders with disabilities to cruel and inhumane treatment and blatantly violating human rights through a lack of medical care, lack of mental health care, and significant and ongoing violations of the Americans with Disabilities Act ("ADA").</u>** These individuals – DRMS clients - are incarcerated in MDOC facilities and are entirely dependent upon MDOC administration, its medical contractor, VitalCore Health Strategies ("VitalCore"), and MDOC staff. Yet the system of care provided by MDOC and its staff and contractors is grossly inadequate and subjects all offenders to a substantial risk of serious harm, including unnecessary pain, loss of function, injury and death.

Due to this deliberate indifference to the obvious medical needs of the persons in their custody, offenders go for months or years without appropriate diagnoses of medical conditions. Numerous offenders have died from a failure to treat medical conditions from cancer, fluid retention, and other illnesses. Others have required emergency surgery or lost the use of legs, arms or eyes, after having been left to suffer with untreated symptoms for lengthy periods. Offenders with mental illnesses or serious psychological problems are entirely denied mental health care or provided only with medication with little to no medication management, follow-up, or concern for side effects. Offenders with a history of self-harm are ignored and/or placed in solitary confinement as a means of treatment/punishment for a mental health illness. Offenders who do not want to take psychiatric medications, often because they are experiencing serious side effects, are forced to take the medication without any regard for due process. If they refuse, they may be beaten, placed in segregation, or denied any medical treatment and/or medication, or all of these. Even when there is a process to determine whether the offender is sufficiently ill and dangerous to warrant involuntary medication, the process falls far short of what due process requires.

Offenders with physical or mental disabilities face discriminatory and dangerous circumstances throughout the MDOC system. They are housed in facilities that cannot accommodate them. They are often housed in

prisons or housing units for offenders with higher security classifications than their own for no reason other than their disabilities. They are not provided with necessary assistive services or devices, such as functioning wheelchairs, shower chairs, ramps, or forms that they can read. They are punished for things they cannot do or do not know how to do because of their disabilities. Additionally, some offenders are attacked and bullied because of his or her disability and the MDOC staff do nothing to intervene.

## MDOC HAS SYSTEMICALLY REFUSED TO PROVIDE ADEQUATE MENTAL HEALTH CARE

MDOC and its staff/contractors fail to provide constitutionally adequate mental health care in a number of ways. Their mental health care delivery system is severely understaffed, and lacks adequate personnel with sufficient expertise to properly treat the individuals within its care. They further fail to identify, treat and medicate individuals with mental illness. Additionally, these systematic failures rise to the level of causing significant injuries and the unnecessary and wanton infliction of pain. Each of these deficiencies, in isolation and in conjunction, result in a violation of the Eighth Amendment.

Further, MDOC has a policy and practice of under-identifying and/or failing to identify mentally ill offenders and understating the acuity of offenders' mental illness upon admission and through the duration of an offender's sentence. As a result, mentally ill offenders go untreated and severely mentally ill offenders receive a far lower level of treatment than they need. MDOC routinely and systematically fails to prescribe, provide and manage necessary psychiatric medications. The agency has designated a total of 3,059 offenders as having a code of MH-1 or greater. Only 2,209, or 8.9% of the MDOC population actually receive psychotropic medication. The average monthly expenditure for psychiatric medications for offenders in the MDOC custody has significantly decreased despite the rise in offenders with mental health illnesses.

Solitary confinement and/or "isolated residency" in many instances has also been used to house offenders who suffer from severe mental health illnesses and disorders. This housing tactic has been used to house offenders for thirty (30) days or more to punish offenders for refusal to take medication related to their mental health as the side effects from their consumption have had a drastic impact on the offenders' quality of life. Even while in such living arrangements, offenders have been denied the opportunity to shower, eat, and consult with a mental health professional. Many times, while in confinement, they are not provided their medication.

## MDOC HAS SYSTEMICALLY FAILED TO COMPLY WITH THE ADA AND SIMILAR LAWS

MDOC is fully aware that almost none of its facilities are in compliance with the ADA regulations and requirements. Despite this knowledge, MDOC discriminates against offenders with disabilities in numerous ways, including, but not limited to, failing to remove architectural barriers, failing to provide reasonable modifications in policies and procedures, failing to provide auxiliary aids and services necessary for effective communication, improperly segregating offenders with disabilities, engaging in contractual arrangements that limit access to appropriate health care for offenders with disabilities. Further, the constitutional violations alleged with regard to the provision of mental health care, including both the denial of care and involuntary medication without due process, also violate the ADA.

With only one exception, every single facility operated by MDOC contains architectural barriers for offenders with disabilities. These are not just minor barriers – there are significant barriers to restrooms and common areas in housing units which often confines an offender with a mobility disability to their beds, hoping they receive some assistance from a fellow offender.

MDOC's discriminatory policy requiring offenders to complete a written form to request medical care is inadequate. Some offenders with vision or intellectual disabilities cannot complete the necessary forms to receive medical care. There are no systems in place to enable offenders who cannot read due to vision or intellectual disabilities to request medical care. Across its facilities, MDOC has a disturbing pattern of discriminatory practices from everything to housing to access to auxiliary aids to access to programs (when/if available) when it comes to its offenders with disabilities.

## MDOC HAS ROUTINELY AND SYSTEMICALLY FAILED TO PROVIDE ADEQUATE HEALTH CARE

MDOC has a policy and practice of failing to provide offenders with adequate health care, and are deliberately indifferent to the fact that the systemic failure to do so results in significant injury and a substantial risk of serious harm. They have failed to provide adequate care in approving medications, equipment, and treatment for those who are in their custody. Their systemic habits of ignoring sick calls and delaying outside appointments and ay follow up examinations have resulted in the deaths of several MDOC offenders.

Further, MDOC has a policy and practice of not providing adequate medical staff to address the serious medical needs of offenders in MDOC custody. MDOC put out a request for proposal for the medical care contract for the prisons that included a listing of minimum staffing requirements that set the level of staffing at each facility far below what is needed to provide adequate care. Further, the request for proposal was explicit in valuing cost containment far more than adequacy of care. The contract ultimately awarded reflected the importance of cost containment and provides inadequate staffing throughout the MDOC system.

MDOC has a policy and practice of denying medical care to offenders with serious medical conditions, or providing such offenders with care that is so cursory or grossly incompetent that it amounts to a denial of care. Such indifference has contributed to numerous offender deaths, serious harm & injury, and worsening medical status due to delay of medical care by MDOC staff and VitalCore. Moreover, there is an utter and complete lack of emergent medical care and such poor response typically results in a substantial increased risk of serious harm, loss of function, or loss of life. MDOC has a policy and practice of allowing correctional officers to deny or delay access to medical care, whether by individual officer's affirmative actions or the systemic understaffing of custodial staff who are necessary to offenders' access to treatment. Much of MDOC staff are not adequately trained on how to handle health care emergencies, and as a result of this failure to respond properly and timely to emergencies, offenders suffer avoidable harm and injuries, including unnecessary deaths. Correctional staff make critical initial decisions about the medical care needed. Understaffing of correctional staff leads to offenders missing off-site medical appointments and offenders in segregation not receiving medical treatment. There are many instances in MDOC facilities where correctional officers have influenced whether or not an offender can go to seek medical treatment at all. Correctional officers have also retaliated against some offenders due to their medical requests and their filing of grievances.

MDOC has systemically failed to adequately provide and manage medication, provide medical supplies, and devices to offenders with disabilities. Medication management is inadequate at best and non-existent in many cases. DRMS has noted issues with medication management – everything from errors in dosage to errors in providing the correct medication to complete failure to provide medication for days at a time.

## MDOC ROUTINELY RETATLIATES AGAINST OFFENDERS FOR EXHAUSTING THEIR ADMINISTRATIVE REMEDIES

MDOC has established a policy or custom that permits MDOC employees and contractors to engage in retaliatory action against offenders who exercise their right to communicate with counsel and file complaints regarding conditions of confinement. MDOC and its staff continuous act recklessly and with deliberate indifference with regard to permitting MDOC employees and contractors to engage in retaliatory action against offenders. Pursuant to the Prison Litigation Reform Act[vi], offenders are required to resolve their complaints through the facility's grievance process and exhausting all administrative appeals prior to pursuing any legal action on an individual basis. MDOC significantly prohibits this from occurring in many ways. DRMS has witnessed the complete absence of a receptacle for grievances in housing units and refusal to provide a grievance form or any type of paper/writing utensil. It has been reported that, when there is no receptacle for their grievances, MDOC staff agrees to submit it for the offender; however, the offender never receives a response of any kind.

It should be noted that, while MDOC is fully aware of the serious nature of the federal constitutional deprivations and statutory violations to which offenders with disabilities are subjected, Commissioner Cain, in his official capacity, has reported to several news outlets and public officials that the conditions of MSP have been rectified/corrected and that no offenders are staying in any condemned zones and/or units. This is completely false and misleading as DRMS is consistently and routinely in these facilities following up on Commissioner Cain's claims.

DRMS intends to pursue legal action in order protect and advocate for the rights and interests of offenders in MDOC custody who are persons with mental illness and persons with mental or physical disabilities. DRMS has spent significant time and resources advocating on behalf of offenders with disabilities in MDOC custody, monitoring and investigating the treatment and accommodation of offenders with disabilities in MDOC custody. DRMS' efforts and expenditures of resources are necessitated by the MDOC policies and practices. DRMS has made every effort to inform MDOC and its staff each and every time there was an issue that should be addressed. More often than not, such notice was met with silence or empty assurances. Pursuant to 42 U.S.C. § 1983, the Eighth & Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act, and §504 to of the Rehabilitation Act of 1973, DRMS intends to seek remedy to these cruel and inhumane conditions and treatment of the offenders with disabilities in the custody of the Mississippi Department of Corrections. While it is DRMS' position that this state has been on notice of

these issues for decades, we intend to put this state and its leaders on notice that DRMS intends to pursue this action immediately.

Sincerely,

Polly Tribble
Executive Director

Greta Kemp Martin
Litigation Director

cc:

Courtney Cockrell, Deputy General Counsel
Mississippi Department of Corrections

Dennis Gregory, Chief Medical Officer
Mississippi Department of Corrections

VitalCore Health Strategies

Honorable Juan Barnett, Chair
Mississippi Senate – Corrections Committee

Honorable Daniel H. Sparks, Vice-Chairman
Mississippi Senate – Corrections Committee

Honorable Kevin Horan, Chair
Mississippi House of Representatives – Corrections Committee

Honorable Carl Mickens, Vice-Chairman
Mississippi House of Representatives – Corrections Committee

---

[i] The authority was first codified through the passage of the Protection & Advocacy for People with Developmental Disabilities (PADD) Act, 42 USC 15043(a)(2)(B). Over time, Congress extended the protections of the PADD Act, incorporating them y reference into legislation protecting persons with other forms of disabilities. This includes both the Protection & Advocacy for Individual Rights (PAIR) Act, 29 USC 794(e)(f)(1), and the Protection and Advocacy for Individuals with Traumatic Brain Injury (PATBI) Act. .42 USC 300d-53(eff. April 28,2008). Similarly, Congress expanded the P&A system through passage of the Protection & Advocacy for Individuals with Mental Illness (PAIMI) Act 42 CFR 51.42(c)(2) and the Protection & Advocacy for Beneficiaries of Social Security (PABSS) Ticket to Work and Work Incentives Improvement Act of 1999, as amended (TWWIIA) 42, USC 1320b-21.
[ii] 42 USC 15043(a)(2)(B) (PADD); 45 CFR 1326.27 (b)(2) (PADD); 42 USC 10801(b)(2)(B) (PAIMI)
[iii] 42 USC 15043(a)(2)(A)(ii) (PADD); 42 USC 10801 (b)(2)(A) (protection and advocacy as PAIMI duty); 29 USC 794e(f)(1) (PAIR authority, generally the same as PADD and PAIMI authority).
[iv] 45 CFR 1322.27(c)(2)(ii)
[v] 42 USC 15043(A)(2)(A)(i) (PADD); 42 USC 10801(b)(2)(B); 42 USC 10807(a) (PAIMI); 29 USC 794e(f)(3) (PAIR).
[vi] 42 USC 1997e(a)